IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | Cr. No. 6:04-112-HMH |
| vs. | ) | C/A No. 6:06-70001-HMH |
| | ) | |
| Noe C. Laureano, | ) | **OPINION AND ORDER** |
| | ) | |
| Movant. | ) | |

This matter is before the court on Noe C. Laureano's ("Laureano") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. After a thorough review of the facts and pertinent law, the court summarily dismisses Laureano's § 2255 motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 11, 2004, Oconee County Sheriff's Department officers stopped Jaime Brito ("Brito") for an improper lane change and found a package containing cocaine in his car. United States v. Laureano, No. 04-4811, 2005 WL 1625247, at *1 (4th Cir. July 12, 2005) (unpublished). The officers arrested Brito, and Brito agreed to complete an intended delivery of the package to Francisco Castillo ("Castillo") under surveillance. Brito called Castillo and was instructed to deliver the package to Castillo's house. (Id.) Later, however, Brito called Castillo and stated that because he had a flat tire, he would meet Castillo at an Ingles parking lot instead. However, Laureano arrived instead of Castillo and parked next to Brito's vehicle in the Ingles parking lot. Laureano accepted the package from Brito and placed it in his car. (Id.) When officers arrested Laureano and asked if he had drugs in his vehicle, Laureano responded, "You know what's in there, you know what a setup is." (Trial Tr. at 96.)

1

On July 13, 2004, a jury found Laureano guilty of one count of conspiracy to possess with intent to distribute or to distribute 500 grams or less of cocaine. Michael A. McKinnon ("McKinnon") represented Laureano at trial and sentencing. On September 13, 2004, Laureano was sentenced to 70 months' imprisonment. Laureano appealed his conviction and sentence. On July 12, 2005, the United States Court of Appeals for the Fourth Circuit affirmed Laureano's conviction. Laureano, 2005 WL 1625247, at *2. Laureano filed the instant § 2255 motion on October 4, 2006.[1]

In his § 2255 motion, Laureano asserts that McKinnon was constitutionally ineffective for (1) failing to obtain affidavits from his co-defendants, Castillo and Brito; (2) failing to properly and adequately examine Castillo and Brito during the trial; and (3) advising Laureano not to testify at trial. The court will address each of Laureano's alleged grounds for relief below.

## II. DISCUSSION OF THE LAW

In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Laureano must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. With respect to the second prong, Laureano must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

---

[1] See Houston v. Lack, 487 U.S. 266 (1988).

First, Laureano argues that McKinnon should have obtained affidavits from Castillo and Brito. (Laureano's Mem. Supp. § 2255 Mot. 4-5.) Laureano asserts that these affidavits would have demonstrated that he had no knowledge of "the crime that they were to commit that night." (Id. 5.) Laureano asserts that the affidavits "would had [sic] provided a direct testimony from the two person [sic] involved." (Id.) Both Brito and Castillo testified at Laureano's trial and thus provided direct testimony regarding Laureano's involvement in the delivery of the cocaine. (Trial Tr. 142-51.) Therefore, Laureano's claim that McKinnon was ineffective for failing to obtain their affidavits is wholly without merit.

Second, Laureano claims that McKinnon improperly and inadequately examined Brito and Castillo. Laureano asserts that McKinnon asked Brito only one question regarding Laureano's involvement, and that had McKinnon adequately questioned Brito and Castillo, "there is a reasonable probability that the jury would had [sic] changed their minds." (Id. 7.) A review of the trial transcript reveals that upon examination, McKinnon questioned both Brito and Castillo regarding Laureano's involvement in the drug delivery. The following exchange occurred during McKinnon's direct examination of Castillo:

> McKinnon:   Okay. And you and Mr. Jaime Brito were involved together in the conspiracy; is that correct?
> Castillo:   Yes.
> McKinnon:   Okay. Was your brother [Laureano] involved in that conspiracy or that agreement to distribute cocaine?
> Castillo:   No.
> . . . .
> McKinnon:   Did Mr. – did – did you anticipate or did you think that Mr. Brito was going to give your brother [Laureano] cocaine that day?
> Castillo:   Not at all.
> . . . .
> McKinnon:   Okay. What was the purpose of Mr. Laureano going to the Ingles parking lot?

> Castillo: To help fix the tire.
> McKinnon: You didn't send – let me restate that question. Did Mr. Laureano – at any other time was he involved with you and Mr. Brito in the distribution of cocaine?
> Castillo: No, never.

(Trial Tr. 143-44.) During his direct examination of Brito, McKinnon similarly asked him:

> McKinnon: Did you ever have any conversations with Noe Laureano in regard to distribution of drugs?
> Brito: Never.

(Id. 150.)

Despite Laureano's assertion that McKinnon failed to adequately examine Brito and Castillo, the trial transcript reveals that both Brito and Castillo testified in response to McKinnon's questioning that Laureano had no knowledge that he participated in a cocaine delivery. (Id.) Additional questioning regarding Laureano's knowledge of the cocaine delivery would have been merely repetitive. Under these circumstances, not only has Laureano failed to show that McKinnon's actions were unreasonable, but Laureano has also failed to demonstrate a reasonable probability that additional questioning would have resulted in a different verdict. Therefore, Laureano's argument that McKinnon failed to adequately and properly examine Brito and Castillo is without merit.

Finally, Laureano argues that McKinnon deprived him of his constitutional right to testify at trial. "[A] criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial." United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992). Further, "[t]his right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." Id. Therefore, "[a] criminal defendant cannot be compelled to remain silent by defense counsel." Id.

4

During Laureano's trial, the court addressed Laureano outside of the presence of the jury in the following exchange:

| | |
|---|---|
| The Court: | Mr. Laureano, would you stand please. As you heard me tell the jury and I will tell them again when they deliberate, the burden of proof in a criminal case is always on the government to prove a defendant guilty beyond a reasonable doubt. A defendant does not have to prove his innocence. That means that you have the right not to testify in your trial and if you choose not [to] testify, that fact cannot be held against you. That's what I will tell the jury again. You may have conferred with your attorney and talked to your attorney about this and your attorney may or may not have given you his recommendation as to whether you should testify. But I want you to know that the decision as to whether you testify or whether you do not testify is your decision and your decision alone. Do you understand that? |
| Laureano: | Yes, sir. |
| The Court: | Is it your desire to testify? |
| Laureano: | I just – I went down there for that purpose. That's all I know. (Defendant answered judge directly, not through the interpreter.) |
| The Court: | I couldn't hear him. |
| Laureano: | I went to the Ingles parking lot for that purpose – (Defendant again answered the judge directly.) |
| The Court: | Do you want to testify in this trial before the jury? (Mr. MacKinnon and the defendant conferred off the record.) |
| Laureano: | (Shakes head negatively.) |
| Interpreter: | He does not want to give testimony. |
| The Court: | And is that your decision and your decision alone? |
| Laureano: | Yes. |

(Trial Tr. 123-24.) Laureano asserts that when he conferred with McKinnon off the record, McKinnon instructed him to "'say no' to what the Court was asking." (Laureano's Mem. Supp. § 2255 Mot. 9.) Laureano asserts that beyond this exchange in court, McKinnon never advised him of the right to testify or of the benefits of testifying. (Id.)

While the right to testify at trial cannot be waived by defense counsel, "if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should,

advise the client in the strongest possible terms not to testify." Teague, 953 F.2d at 1533. Thus, "[a]bsent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute ineffective assistance of counsel." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002) (noting that "the advice provided by a criminal defense lawyer on whether his client should testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance") (internal quotation marks omitted).

According to Laureano, McKinnon advised him to "say no" when the court asked Laureano a second time if he would like to testify. (Laureano's Mem. Supp. § 2255 Mot. 9.) However, McKinnon's advice to Laureano that he should not testify does not constitute ineffective assistance of counsel. See Carter, 283 F.3d at 249. Laureano does not argue that McKinnon coerced him into not testifying. Further, the court informed Laureano that the decision to testify belonged to him alone, irrespective of any advice he may have received from McKinnon, and Laureano confirmed that the decision to not testify was his alone. (Trial Tr. 124.) Therefore, Laureano's claim that McKinnon's advice to not testify constituted ineffective assistance of counsel is without merit.

Laureano further asserts that McKinnon failed to inform him of the right to testify or the benefits of testifying. However, Laureano fails to show that he was prejudiced by McKinnon's failure to advise him of the right to testify, since "the Court itself informed [Laureano] of his right to testify in no uncertain terms." Owens v. United States, 236 F. Supp. 2d 122, 144 (D. Mass. 2002) (finding no prejudice despite defense counsel's failure to discuss the issue of testifying with the defendant when the court clearly informed the defendant of his right to testify). The court not only informed Laureano of his right to testify, but also directly asked

6

Laureano if he wished to testify. (Tr. 123-24.) Therefore, even if McKinnon did not advise Laureano of the right to testify, Laureano fails to show how he was prejudiced. Based on the foregoing, Laureano's allegations fail to show that McKinnon acted in an objectively unreasonable manner at trial, and that any of the alleged errors prejudiced Laureano. As such, these claims are without merit and warrant no further consideration.

It is therefore

**ORDERED** that Laureano's § 2255 motion is summarily dismissed.

**IT IS SO ORDERED**.

                                              s/Henry M. Herlong, Jr.
                                              United States District Judge

Greenville, South Carolina
October 25, 2006

## NOTICE OF RIGHT TO APPEAL

The movant is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.